IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GLYNN A. WILDONER JR., | No. 4:23-CV-01116 |
| Petitioner, | (Chief Judge Brann) |
| v. | |
| KEVIN RANSOM, | |
| Respondent. | |

MEMORANDUM OPINION

JULY 19, 2024

Petitioner Glynn A. Wildoner, Jr., filed the instant *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He seeks to overturn his 2018 convictions and sentence entered by the Court of Common Pleas of Luzerne County, Pennsylvania. Because Wildoner cannot satisfy the stringent requirements for federal habeas relief, the Court will deny his Section 2254 petition.

**I.    BACKGROUND AND PROCEDURAL HISTORY**

In October 2017, following a one-day jury trial, Wildoner was found guilty of three counts of rape, three counts of statutory sexual assault, once count of involuntary deviate sexual intercourse with a person less than 16 years of age, four counts of unlawful contact with a minor, one count of aggravated indecent assault, four counts of corruption of minors, two counts of endangering the welfare of

children, and four counts of indecent assault.[1] Those convictions stemmed from a series of sexual assaults in mid-2016 against minors K.H. and A.H., who were both 14 years old at the time of the offenses.[2] K.H. was the victim of most of the sexually assaultive conduct, including rape and involuntary deviate sexual intercourse.[3] A.H., K.H.'s sister, only suffered one inappropriate encounter with Wildoner where he attempted to remove A.H.'s pants.[4]

On January 26, 2018, Wildoner was sentenced to an aggregate term of 25 to 50 years' imprisonment.[5] He appealed, but the Superior Court of Pennsylvania affirmed the judgment of sentence.[6] In December 2019, the Supreme Court of Pennsylvania denied Wildoner's petition for allowance of appeal.[7]

Wildoner then timely filed a petition under Pennsylvania's Post Conviction Relief Act (PCRA),[8] the state's corollary to federal habeas relief.[9] Following an evidentiary hearing, the PCRA court denied Wildoner's petition.[10] Wildoner filed a counseled PCRA appeal, although his appointed appellate attorney sought leave

---

1   *Commonwealth v. Wildoner*, No. 981 MDA 2018, 2019 WL 2447057, at *1 (Pa. Super. Ct. June 11, 2019) (nonprecedential).
2   *Id.*
3   *Id.*
4   *Id.*, at *1-2.
5   *Id.*, at *1.
6   *Id.*, at *1, 7.
7   *Commonwealth v. Wildoner*, No. 406 MAL 2019, 222 A.3d 378 (Pa. 2019) (table).
8   42 PA. CONS. STAT. § 9541 *et seq.*
9   *See Commonwealth v. Wildoner*, No. 779 MDA 2022, 2022 WL 17999211, at *1 (Pa. Super. Ct. Dec. 30, 2022) (nonprecedential).
10  *Id.*

to withdraw representation by filing a *Turner*/*Finley*[11] no-merit brief, opining that there were no arguable issues on which to appeal.[12] On December 30, 2022, the Superior Court affirmed the PCRA court's denial of Wildoner's PCRA petition.[13] It does not appear that he filed a petition for allowance of appeal with the Supreme Court of Pennsylvania.

Wildoner timely filed his Section 2254 petition in this Court in June 2023.[14] After multiple extensions, Respondent filed a response on January 3, 2024.[15] Wildoner did not file a traverse. His petition, therefore, is ripe for disposition.

## II.   STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)[16] mandates that petitioners demonstrate that they have "exhausted the remedies available in the courts of the State" before seeking federal habeas relief.[17] An exhausted claim is one that has been "fairly presented" to the state courts "by invoking one complete round of the State's established appellate review process," and which has been adjudicated on the merits.[18]

---

[11]   *See Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988); *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. Ct. 1988) (en banc).
[12]   *See Wildoner*, No. 779 MDA 2022, 2022 WL 17999211, at *1-2.
[13]   *Id.*, at *1, 5.
[14]   Doc. 1.
[15]   Doc. 21.
[16]   28 U.S.C. §§ 2241–2254.
[17]   *Id.* § 2254(b)(1)(A).
[18]   *Carpenter v. Vaughn*, 296 F.3d 138, 146 (3d Cir. 2002) (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999)); *see also Johnson v. Williams*, 568 U.S. 289, 302 (2013).

If a state prisoner has not fairly presented a claim to the state courts "but state law clearly forecloses review, exhaustion is excused, but the doctrine of procedural default may come into play."[19]  Generally, if a prisoner has procedurally defaulted on a claim by failing to raise it in state-court proceedings, a federal habeas court will not review the merits of the claim, even one that implicates constitutional concerns.[20]

A few limited exceptions to this rule exist.  One exception is that "[a] prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law."[21]  "Cause for a procedural default exists where something *external* to the petitioner, something that cannot fairly be attributed to him[,] . . . impeded [his] efforts to comply with the State's procedural rule."[22]  To establish prejudice, a petitioner must show not merely that there were errors that created a possibility of prejudice, but that they "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."[23]  If cause and prejudice are established, the federal

---

[19] *Carpenter*, 296 F.3d at 146 (citations omitted).
[20] *Martinez v. Ryan*, 566 U.S. 1, 9 (2012) (citing *Coleman v. Thompson*, 501 U.S. 722, 747-48 (1991); *Wainwright v. Sykes*, 433 U.S. 72, 84-85 (1977)).
[21] *Id.* at 10 (citing *Coleman*, 501 U.S. at 750).
[22] *Maples v. Thomas*, 565 U.S. 266, 280 (2012) (alterations in original) (citations and internal quotation marks omitted).
[23] *Holland v. Horn*, 519 F.3d 107, 112 (3d Cir. 2008) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)).

court reviews the claim *de novo* "because the state court did not consider the claim on the merits."[24]

Another rare exception that will excuse a procedural default is if the petitioner can show that "failure to consider the claim will result in a fundamental 'miscarriage of justice.'"[25] To satisfy the "fundamental miscarriage of justice" exception, a petitioner typically will have to show actual innocence.[26]

When a claim is properly exhausted and then raised on federal habeas review, the level of deference afforded to the state court decision is substantial.[27] The AEDPA "does not 'permit federal judges to . . . casually second-guess the decisions of their state-court colleagues or defense attorneys.'"[28] Thus, under Section 2254(d), federal habeas relief is unavailable for exhausted claims unless the state-court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law . . . or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[29] An unreasonable application of Supreme Court precedent includes situations where "the state court

---

[24] *Bey v. Superintendent Greene SCI*, 856 F.3d 230, 236 (3d Cir. 2017), *cert. denied sub nom. Gilmore v. Bey*, 138 S. Ct. 740 (2018) (mem.) (citation omitted).
[25] *Carpenter*, 296 F.3d at 146 (quoting *Coleman*, 501 U.S. at 750).
[26] *Leyva v. Williams*, 504 F.3d 357, 366 (3d Cir. 2007) (citation omitted).
[27] *Bey*, 856 F.3d at 236.
[28] *Collins v. Sec'y of Pa. Dep't of Corr.*, 742 F.3d 528, 543 (3d Cir. 2014) (quoting *Burt v. Titlow*, 571 U.S. 12, 15 (2013)).
[29] 28 U.S.C. § 2254(d).

identifies the correct governing legal rule . . . but unreasonably applies it to the facts of the particular state prisoner's case."[30]

This is an intentionally difficult standard to meet.[31] Section 2254(d) "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" clearly established Supreme Court precedent.[32] Thus, to obtain federal habeas relief on an exhausted claim, a state prisoner must demonstrate that the state court's ruling on the claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement."[33]

Finally, if a state court has ruled on the merits of a claim, a federal habeas petitioner generally must meet Section 2254(d)'s requirements "on the record that was before that state court."[34] Absent compelling circumstances,[35] district courts cannot supplement the existing state-court record for claims adjudicated on the merits.[36] "Otherwise, federal habeas petitioners would be able to circumvent the

---

[30] *White v. Woodall*, 572 U.S. 415, 425 (2014) (quoting *Williams v. Taylor*, 529 U.S. 362, 407 (2000)).
[31] *Harrington v. Richter*, 562 U.S. 86, 102 (2011).
[32] *Id.*
[33] *Id.* at 103.
[34] *Cullen v. Pinholster*, 563 U.S. 170, 185 (2011) (footnote omitted).
[35] *See* 28 U.S.C. § 2254(e)(2).
[36] *Brown v. Wenerowicz*, 663 F.3d 619, 629 (3d Cir. 2011).

finality of state court judgments by establishing a new factual record" on federal habeas review.[37]

## III.  DISCUSSION

Wildoner purports to raise three grounds for relief in his Section 2254 petition.  First, he alleges a standalone due process violation regarding the "exclusion" of DNA evidence from his trial.[38]  Within this claim, he also contends that his trial counsel was constitutionally ineffective for failing to attempt to admit this DNA evidence.[39]  In his second ground for relief, Wildoner asserts that he was "denied a fair trial" when the trial court excluded the testimony of "Brian Mor[g]is,"[40] which Wildoner maintains "would have impeached the testimony of" victim K.H.[41]  Lastly, Wildoner reasserts—as an independent third ground for relief—his ineffective-assistance claim regarding trial counsel's failure to introduce certain DNA evidence.[42]

Wildoner's first claim alleging a standalone due process violation with respect to the "exclusion" of the DNA evidence requires only brief discussion. This Fourteenth Amendment claim was never raised in state court or pressed

---

[37] *Id.*
[38] Doc. 1 at 5.
[39] *See id.*
[40] Although Wildoner identifies this potential witness as Brian "Morris," (*see* Doc. 1 at 6), his appellate brief and the Superior Court's decision on direct appeal both indicate that the potential witness's name is Brian "Morgis." *See* Doc. 24-3 at 2, 20; *Wildoner*, 981 MDA 2018, 2019 WL 2447057, at *1.
[41] Doc. 1 at 6.
[42] *Id.* at 8.

through one complete round of appellate review and thus it is procedurally defaulted. Wildoner does not discuss, let alone establish, cause or prejudice to excuse his default of this due process claim, so it is unreviewable.[43]

Additionally, the Court observes that there logically could be no due process violation by the trial court for excluding evidence that Wildoner never attempted to admit. As noted above, within this first ground for relief, Wildoner faults his trial counsel for failing to introduce the DNA report. Thus, Wildoner is actually asserting only one constitutional error with respect to the DNA evidence: deficient performance by his trial counsel for failing to seek admission of the DNA report. Accordingly, only grounds two and three of his petition require further discussion.

### A. Ground Two – Exclusion of Testimony of Brian Morgis

In ground two, Wildoner asserts that he was "denied a fair trial" when the trial court excluded the proffered testimony of Brian Morgis, which Wildoner claims "would have impeached the testimony of K.H. . . . and would have potentially g[iven] reasonable doubt to [the] jury[.]"[44] On direct appeal, Wildoner challenged the trial court's exclusion of testimony from Morgis (a corrections officer who collected and inventoried Wildoner's clothing following his June 16, 2016 arrest) and two other potential witnesses that would demonstrate that

---

43  *See Martinez*, 566 U.S. at 9.
44  Doc. 1 at 6.

8

Wildoner did not own or customarily wear underwear.[45] He claimed that this evidence was necessary to impeach K.H., who had testified that Wildoner had removed his underwear before sexually assaulting her.[46] Wildoner's question for review in the Superior Court asked whether "the trial court err[ed] or abuse[d] its discretion by precluding the defense from presenting testimony of Brian Morgis" and two other proposed witnesses concerning Wildoner not wearing or owning underwear.[47]

The Superior Court, quite reasonably, treated this claim as a challenge to the trial court's evidentiary rulings based on relevant state-law rules of evidence.[48] Consequently, the panel reviewed the pertinent Pennsylvania Rules of Evidence and found that the trial court had not abused its discretion in excluding the proffered testimony.[49] In particular, the Superior Court found that, because the trial court had permitted Wildoner to testify regarding his underwear habits and Wildoner did not provide any testimony about this issue during his time on the witness stand, he could not establish that he was prejudiced by the exclusion of the other witnesses' testimony.[50]

---

[45] *See* Doc. 24-3 at 21; *Wildoner*, 981 MDA 2018, 2019 WL 2447057, at *1-2.
[46] *Wildoner*, 981 MDA 2018, 2019 WL 2447057, at *2.
[47] *Id.*, at *1.
[48] *Id.*, at *2.
[49] *Id.*, at *2-3.
[50] *Id.*, at *3.

The fundamental flaw with Wildoner's second ground for relief is that evidentiary challenges based on state law are not cognizable on federal habeas review.[51]  "[F]ederal habeas corpus relief does not lie for errors of state law."[52]  As the Supreme Court of the United States has repeatedly admonished, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."[53]  Rather, federal habeas courts may "entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court *only on the ground* that he is in custody in violation of the Constitution or laws or treaties of the United States."[54]  So if Wildoner is asserting a challenge to the trial court's evidentiary rulings based on its application of state law, that claim is a nonstarter.

Assuming Wildoner's evidentiary claim in ground two could be construed as asserting a Fourteenth Amendment due process violation,[55] any such claim is procedurally defaulted.  Wildoner simply never asserted in state court that the trial

---

[51] *See Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (explaining that inquiry regarding evidentiary ruling based on state law "is no part of a federal court's habeas review of a state conviction"); *see also Smith v. Horn*, 120 F.3d 400, 414 (3d Cir. 1997) ("[A] state court's misapplication of its own law does not generally raise a constitutional claim. The federal courts have no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension.").
[52] *Estelle*, 502 U.S. at 67 (citation omitted).
[53] *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting *Estelle*, 502 U.S. at 67-68).
[54] 28 U.S.C. § 2254(a) (emphasis added); *Estelle*, 502 U.S. at 68.
[55] *Cf. Keller v. Larkins*, 251 F.3d 408, 416 n.2 (3d Cir. 2001) ("A federal habeas court, however, cannot decide whether the evidence in question was properly allowed under the state law of evidence.  A federal habeas court is limited to deciding whether the admission of the evidence rose to the level of a due process violation[.]").

court's evidentiary rulings resulted in a constitutional violation or a violation of his federal rights.[56]  Nor does he discuss or establish cause and prejudice to excuse his default.  Accordingly, ground two—to the extent it can be construed as asserting a due process violation—is procedurally defaulted and unreviewable.[57]  Indeed, the Court cannot review the state court decision to determine whether it was "contrary to, or involved an unreasonable application of, clearly established Federal law"[58] if the state court was never presented with a federal claim in the first instance.

### B.     Ground Three – Ineffective Assistance of Counsel, DNA Evidence

Wildoner's primary claim in his Section 2254 petition is that his trial attorney—John Donovan—was constitutionally deficient for failing to introduce a January 13, 2017 DNA report at trial.  Wildoner contends that the DNA test results are "probative of a lack of intercourse" and thus exculpatory with respect to his rape convictions.[59]  Wildoner, however, does not explain how the DNA report is probative of a lack of intercourse, nor does he specify which of the report's

---

[56] *See, e.g.*, *McCandless v. Vaughn*, 172 F.3d 255, 262 (3d Cir. 1999) ("[Petitioner] presented his "prosecutorial vouching" claim to Pennsylvania's courts as an evidentiary law challenge and not as a violation of a federal or constitutional right.  He did not assert this claim in terms that bring to mind a constitutional right.  On the contrary, his Superior and Pennsylvania Supreme Court briefs articulated this claim in terms similar to a Rule 403 objection, contending that the cooperation agreement testimony was "irrelevant" and "prejudicial" and therefore improperly admitted.   Nowhere are the terms "constitution," "due process" or even "fair trial" mentioned.").
[57] *See Martinez*, 566 U.S. at 9.
[58] 28 U.S.C. § 2254(d)(1).
[59] *See* Doc. 1 at 5, 8.

conclusions he believes to be exculpatory or otherwise would have had a reasonable probability of altering the outcome of his trial.

As best the Court can discern, Wildoner is relying on a portion of the report (section 9) that indicates that there was a "partial Y chromosome DNA haplotype" found in the vaginal swab specimen of victim K.H., and that he was excluded as a potential contributor of that Y chromosome DNA.[60]  As summarized during the PCRA hearing, "Section 9 indicates . . . that they've [found] some DNA.  It was not the victim's.  It was not Mr. Wildoner's, and it was some other individual for which they didn't have a match to.  So it was some unknown third party[.]"[61]  Wildoner properly exhausted this ineffective-assistance claim in state court.[62]

A collateral attack based on ineffective assistance of counsel is governed by the familiar two-pronged test set forth in *Strickland v. Washington*.[63]  To prevail on such a claim, a defendant must demonstrate that (1) counsel's representation fell below an objective level of reasonableness based on prevailing professional norms, and (2) the deficient representation was prejudicial.[64]  The defendant bears the burden of proving both prongs.[65]

---

[60] *See* Doc. 1-1 at 4-5 ¶ 9 (highlighted portions); Mar. 3, 2022 PCRA Hr'g Tr. 21:22-22:15 (hereinafter "PCRA Hr'g __:__").
[61] PCRA Hr'g 22:10-14.
[62] *See Wildoner*, No. 779 MDA 2022, 2022 WL 17999211, at *2-3.
[63] 466 U.S. 668 (1984).
[64] *Strickland*, 466 U.S. at 687-88.
[65] *See id.* at 687.

12

In determining whether counsel has satisfied the objective standard of reasonableness under the first prong, courts must be highly deferential toward counsel's conduct.[66] There is a strong presumption that counsel's performance falls within the wide range of reasonable professional assistance.[67] Only a "rare claim" of ineffectiveness of counsel should succeed "under the properly deferential standard to be applied in scrutinizing counsel's performance."[68]

To satisfy the prejudice prong, the defendant must establish a reasonable probability that, but for counsel's errors, the outcome of the proceeding would have been different.[69] The district court need not conduct its analysis of the two prongs in a particular order or even address both prongs of the inquiry if the defendant makes an insufficient showing on one.[70]

When a claim of ineffective assistance of counsel has been exhausted in state court, review of that claim by a federal habeas court is significantly circumscribed. The federal court does not review the ineffectiveness claim *de novo*; rather, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable."[71] Under this "doubly" deferential standard, "so long as fairminded jurists could disagree on the correctness of the

---

[66] *Id.* at 689.
[67] *See United States v. Gray*, 878 F.2d 702, 710 (3d Cir. 1989).
[68] *Id.* at 711 (citing *Strickland*, 466 U.S. at 689-90).
[69] *Strickland*, 466 U.S. at 694.
[70] *See id.* at 697; *United States v. Lilly*, 536 F.3d 190, 196 (3d Cir. 2008).
[71] *Harrington*, 562 U.S. at 101 (emphasis added); *Collins*, 742 F.3d at 547-48.

13

state court's decision," a state court's determination that a *Strickland* claim lacks merit precludes federal habeas relief.[72]

On PCRA appeal, the Superior Court denied this ineffective-assistance claim on the merits.[73] The panel reasoned that Wildoner had failed to establish how the at-issue DNA evidence would have been beneficial to his case "as the defense theory at trial was that [Wildoner] was falsely accused of sexually assaulting the victims."[74] Attorney Donovan's PCRA testimony bolstered this conclusion, as he had "argued that there should have been no DNA results or physical evidence to present at trial in light of Wildoner's assertion that the abuse never occurred."[75]

Thus, it appears that the Superior Court concluded that Wildoner had failed to establish that Attorney Donovan's performance was deficient. That is, Attorney Donovan was not ineffective for failing to introduce the DNA report when the theory of defense was that no physical evidence of rape existed because no sexual assault on K.H. had occurred (as opposed to, for example, that the assailant was a different person).

The Superior Court's determination on this claim was not an unreasonable application of *Strickland*. Attorney Donovan's theory of defense was based on Wildoner's insistence that no sexual assault had occurred and that K.H.'s and

---

[72] *Harrington*, 562 U.S. at 101, 105 (citation omitted).
[73] *See Wildoner*, No. 779 MDA 2022, 2022 WL 17999211, at *3.
[74] *Id.*
[75] *Id.*

14

A.H.'s accusations were false.[76] Attorney Donovan thus attempted to impeach the victims' testimony to establish that they were not credible, and he attempted to show that it would have been difficult if not impossible for Wildoner to have sexually assaulted K.H. when other people were nearby inside and outside the house.[77] The DNA report, in Attorney Donovan's opinion, would only confuse the jury and muddle the theory of defense.[78]

Attorney Donovan's strategic litigation choices were not unreasonable or below an acceptable level of professional judgment. This is not a situation where the defendant's theory of the case was that someone else had committed the sexual assault and therefore Y-chromosome DNA from another unidentified male found in a vaginal swab of the victim would be potent exculpatory evidence. Rather, Wildoner claimed that no sexual assault had occurred. Moreover, as Respondent points out, the at-issue DNA evidence—under the facts of this case—could imply that K.H. was either sexually active with another person or was the victim of sexual assault by another person. In either scenario, Section 9 of the DNA report may very well have been inadmissible pursuant to Pennsylvania's Rape Shield Law, 18 PA. CONS. STAT. § 3104.[79]

---

[76] *See* PCRA Hr'g 20:8-16, 21:2-6, 22:22-24, 24:2-6.
[77] *Id.* at 20:21-21:6.
[78] *Id.* at 25:19-25.
[79] "Evidence of specific instances of the alleged victim's past sexual conduct, past sexual victimization, allegations of past sexual victimization, opinion evidence of the alleged victim's past sexual conduct, and reputation evidence of the alleged victim's past sexual conduct shall not be admissible in prosecutions of any offense listed in subsection (c) . . . ." 18 PA. CONS.

15

At bottom, the state court's determination on this claim reflects a reasonable application of *Strickland*. Wildoner has provided no argument or legal authority establishing that his trial attorney's strategic decision to omit the DNA report was constitutionally deficient, or that the Superior Court's application of *Strickland* was unreasonable. Wildoner's third and final claim, therefore, warrants no relief.

### IV.   CONCLUSION

For the foregoing reasons, the Court will deny Wildoner's petition for a writ of habeas corpus under 28 U.S.C. § 2254. The Court will likewise decline to issue a certificate of appealability, as Wildoner has failed to make a substantial showing of the denial of a constitutional right,[80] or that "jurists of reason would find it debatable" whether this Court's procedural rulings are correct.[81] An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

STAT. § 3104(a). "The Rape Shield Law is intended to exclude irrelevant and abusive inquiries regarding prior sexual conduct of sexual assault complainants." *Commonwealth v. Burns*, 988 A.2d 684, 689 (Pa. Super. Ct. 2019) (citation omitted). Moreover, "[the] Pennsylvania Supreme Court has explained that the specific purpose of the Pennsylvania Rape Shield Law is to prevent a sexual assault trial from degenerating into an attack upon the collateral issue of the complainant's reputation rather than focusing on the relevant legal issues and the question of whether the events alleged by the complainant against the defendant actually occurred." *Commonwealth v. Jones*, 826 A.2d 900, 908 (Pa. Super. Ct. 2003) (citing *Commonwealth v. Berkowitz*, 641 A.2d 1161, 1165 (Pa. 1994)).

[80]   28 U.S.C. § 2253(c)(2).
[81]   *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).